UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 2 0 2017
```

United States of America,

—v—

Michael Laboy,

        Defendant.

16-CR-669 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Now before the Court comes Defendant's objections to the Probation Department's calculations of the applicable United States Sentencing Guidelines (the "Guidelines") imprisonment range as stated in the Presentence Investigation Report ("PSR"). For the following reasons, the Court adopts the calculations as stated in the PSR and finds that the applicable Guidelines range is 84 to 105 months.

**I.    Background**

    On December 27, 2016, Defendant Michael Laboy entered a plea of guilty before Magistrate Judge Barbara Moses to one count of possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). *See generally* December 27, 2016 Plea Transcript, Dkt. No. 29. On January 12, 2017, the Court accepted the Defendant's guilty plea, having determined that it was entered knowingly and voluntarily, and that there was a factual basis for the plea. *See* Dkt. No. 28.

    Defendant's sentencing, having been adjourned three times, *see* Dkt. Nos. 35, 41, and 44, was due to take place on September 21, 2017. In his pre-sentence submissions, Defendant argued that Probation's Guidelines calculation in the PSR was incorrect for two reasons. *See* Dkt. No. 37. The calculation in the PSR applied the base offense level in U.S.S.G. § 2K2.1(a)(2), which applies "if the defendant committed any part of the instant offense subsequent to

1

sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." First, Defendant argued that his 2011 conviction for criminal sale of a controlled substance in the fifth degree, in violation of New York Penal Law § 220.31, did not qualify as a "controlled substance offense" for the purposes of the Guidelines calculation. Dkt. No. 37 at 1-3. Second, Defendant argued that his 2012 conviction for robbery in the third degree, in violation of New York Penal Law § 160.05, did not qualify as a "crime of violence" for purposes of the Guidelines calculation. *Id.* at 3-8.

At the hearing on September 21, the Court heard oral arguments on Defendant's objections to the Guidelines calculation in the PSR. *See generally* September 21, 2017 Sentencing Transcript, Dkt. No. 46. In some material respects, the oral arguments differed from the arguments made in the parties' written submissions. As a result, the Court decided to reserve judgment on Defendant's objections, and requested that the parties submit supplemental briefing of the issues. *See id.* at 37:15-42:4. The Court indicated that it would resolve the outstanding issues by written order clarifying the applicable Guidelines range, and then schedule arguments on the sentencing factors laid out in 18 U.S.C. § 3553(a). *Id.*

In October, the parties filed their supplemental briefs. *See* Dkt Nos. 48 & 49. In his new submission, Defendant withdrew his argument that his robbery conviction did not constitute a "crime of violence" in light of a recent Second Circuit decision in *United States v. Corey Jones*, --F.3d--, 2017 WL 4456719 (Oct. 5, 2017). *See* Dkt. No. 49 at 6. The parties maintain their disagreements about the proper effect of Mr. Laboy's conviction for criminal sale of a controlled substance in the fifth degree on the applicable Guidelines calculation, and these arguments are now before the Court for resolution.

**II.  Discussion**

With only one prior felony conviction for a "crime of violence," Defendant's base offense level in the Guidelines for the instant offense would be 20. *See* § 2K2.1(a)(4)(A). However, as stated above, the applicable Guidelines provision sets a base offense level of 24 "if

2

the defendant committed any part of the instant offense subsequent to sustaining at least *two* felony convictions of either a crime of violence or a controlled substance offense." *See* § 2K2.1(a)(2) (emphasis added).

Application Note 1 for the provision specifies that "controlled substance offense" is given the "meaning given that term in § 4B1.2(b)...." In turn, Section 4B1.2(b) defines "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Thus, if the Defendant's prior conviction is for a "controlled substance offense" as defined by § 4B1.2(b), then the applicable base offense level would be 24, not 20. The Defendant was convicted in 2011 for criminal sale of a controlled substance in the fifth degree in violation of New York Penal Law § 220.31.

The gravamen of Defendant's argument is that the categorical approach developed by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), mandates that if Mr. Laboy theoretically could have been convicted under the state statute for conduct not criminalized under federal law, then his 2011 conviction does not qualify as a "controlled substance offense" for purposes of the Guidelines calculation as set forth above. *See* Dkt. No. 37 at 1. It is not disputed that Defendant's at-issue prior conviction was for a violation of a statute the Second Circuit recently held is "indivisible." *See Harbin v. Sessions*, 860 F.3d 58, 63 (2017). Defendant argues that as an indivisible statute, courts apply the categorical approach, which only "looks to the statutory definition of the offense of conviction, and not to the particulars of an [individual's] behavior" in determining whether the conviction forms a valid predicate for a sentence enhancement. *Id.* at 68 (quoting *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015)). At the time of Defendant's conviction, there was one drug on New York's schedule of controlled substances that was not listed on the federal Controlled Substances Act (CSA) – namely, human chorionic

3

gonadotropin (HCG). Dkt. No. 37 at 3. Given this, Defendant argues that his 2011 conviction for criminal sale of a controlled substance in the fifth degree cannot be used to enhance his sentence under the categorical approach. *Id.* Theoretically, Mr. Laboy could have been convicted in New York under § 220.31 for distribution of HCG, which would not have been criminalized under federal law.

The Government counters that Defendant is asking the Court to inappropriately import the federal schedule into the definition of "controlled substance offense," and that Mr. Laboy's 2011 conviction qualifies as "an offense under…state law" under § 4B1.2(b)'s definition of "controlled substance offense." *See* Dkt. No. 39 at 2-3.

### A. Traditional Methods of Statutory Interpretation Are Sufficient Here To Determine the Meaning of the Guidelines

At base, in issue is how to interpret § 4B1.2(b) of the Sentencing Guidelines.

The Court is "guided by the notion that the Guidelines, having the force and effect of law, are to be construed as if they were a statute, giving the words used their common meaning, absent a clearly expressed manifestation of contrary intent." *United States v. Kirvan*, 86 F.3d 309, 311 (2d Cir. 1996) (citing *United States v. Turkette*, 452 U.S. 576, 580 (1981)); *accord United States v. Demerritt*, 196 F.3d 138, 141 (2d Cir. 1999); *United States v. Maria*, 186 F.3d 65, 70 (2d Cir. 1999). "As with statutory language, the plain and unambiguous language of the Sentencing Guidelines affords the best resource for their proper interpretation." *United States v. Millar*, 79 F.3d 338, 346 (2d Cir. 1996) (quotation marks and citation omitted). Courts "interpret the Guidelines to give effect to the intent of the Sentencing Commission." *United States v. Gibson*, 135 F.3d 257, 261 (2d Cir. 1998).

Here, the plain text of the definition of "controlled substance offense" is sufficient to divine the intent of the Sentencing Commission, and the Court need not utilize interpretive tools beyond those of traditional textual analysis to decide this issue.

First and foremost, § 4B1.2(b)'s definition of "controlled substance offense" begins with the phrase "an offense under federal *or* state law." § 4B1.2(b) (emphasis added). The plain

4

reading of this disjunctive "or" indicates that the Commission intended to incorporate state offenses as qualifying predicates.

Second, the definition provides that the relevant offenses are those that proscribe specific conduct – "the manufacture, import, export, distribution, or dispensing of" – with respect to "controlled substances." § 4B1.2(b). By its very nature, the phrase "controlled substances" has no inherent meaning beyond a governing entity's decision to control certain substances and not others. The leading legal dictionary defines a "controlled substance" as "any type of drug whose possession and use is regulated by law." *Black's Law Dictionary* (10th ed. 2014). Accordingly, in the context of a definition that captures offenses under federal *or* state law, a plain textual reading demonstrates that qualifying predicate state offenses would carry with them a reference to their own state drug schedules, as the state which proscribes the conduct is also the controlling entity. Based on the text alone, it is not reasonable to interpret the definition's reference to "controlled substances" as only referring to those substances controlled by federal law, and not by state law.

Third, if the Commission had wanted to incorporate a federal definition of "controlled substances," or cross-reference the CSA, it could have done so. In other places in the Guidelines, including in the immediately preceding section, the Commission has incorporated federal definitions. *See, e.g.*, § 4B1.2(a) (referring to the definition under federal law of firearms or explosive materials). The Commission also could have used another formulation to ensure the definition was coextensive with federal law, such as "an offense under state law that would have been an offense under Title 21 of the United States Code." *See* § 4B1.2(a), Application Note 1 (using a similar phrase with respect to the definition of "forcible sex offense"). Similarly, in federal immigration law, Congress specifies that an alien is removable if convicted of a violation of "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C. § 1227(a)(2)(B)(i). Absent the importation of the word "federal" into the Guidelines definition at issue here, there is

no reason to believe that offenses under state law would be limited to those drugs regulated by federal law.

### B. Defendant's Alternative Textual Argument Also Fails

Although the main thrust of Defendant's argument focuses on the categorical analysis further explicated below, Defendant does not disagree that normal tools of textual interpretation apply here. *See* Dkt. No. 49 at 2. Instead, Defendant offers an alternative textual approach, arguing that the Court should start its analysis with the default assumption, stated in *Jerome v. United States*, that "in the absence of a plain indication to the contrary, ... Congress when it enacts a statute is not making the application of the federal act dependent on state law." *Id.* (quoting 318 U.S. 101, 104 (1943)). In *United States v. Savin*, which is cited by Mr. Laboy, the Second Circuit applied the *Jerome* presumption to the construction of terms in the Guidelines. 349 F.3d 27, 34 (2d Cir. 2003). Nonetheless, the *Savin* court also conducted a textual analysis of a term in the Guidelines applying "traditional principles of statutory construction." 349 F.3d at 35-37 (defining "foreign investment company" based on, among other sources, the dictionary definition of "investment company"). That is, the *Jerome* presumption still does not supplant the plain meaning of the statute. Moreover, the inclusion of "offenses...under state law" *is* a "plain indication to the contrary" that overcomes the *Jerome* presumption. As a result, on its reading of the plain text of the definition at issue here and despite the *Jerome* presumption, the Court will not import a cross-reference omitted by the Commission.

### C. Defendant Improperly Applies the Categorical Approach

Rather than effectively countering this plain text reading of § 4B1.2(b), Defendant argues that the categorical approach outlined by the Supreme Court mandates that the Court find a "generic" version of "controlled substance offense." The Court disagrees.

#### 1. The Rationale Underlying *Taylor* and Its Progeny Need Not Apply Here, As There Is No "Generic" Version of "Controlled Substance"

It is important to be clear about when and how the categorical approach applies. There are essentially two different steps to the analytical process, and the categorical approach is only

required for the second. First, the Court must consider how the Guidelines defines which offenses qualify as predicate offenses for purposes of sentencing enhancements. Generally speaking, the categorical approach *may or may not* apply to this first step, as further explained below. Second, the Court must look at the statute of conviction to determine whether it matches this Guidelines definition of a qualifying predicate. Given that the statute at issue here – N.Y.P.L. § 220.31 – is an indivisible statute, the categorical approach (and not the modified categorical approach) *must* be applied to this second step. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). Consequently, the Court is prohibited from looking at the particular conduct underlying Mr. Laboy's 2011 conviction. *Id.*

Given the distinction between the two steps described above, then, while Defendant correctly notes that the categorical approach "applies when determining whether a prior state conviction qualifies as a controlled substance offense under § 4B1.2(b)," Dkt. No. 49 at 1 (citing *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008)), the categorical approach does not mandate a particular interpretation of the term "controlled substance." Rather, the categorical approach is but one interpretive tool that courts use to understand Guidelines provisions.

Defendant argues that the now-familiar process of analyzing Guidelines language in order to discern the "generic" form of a crime must be applied here with equal force. *Id.* at 3-4. He then proceeds to argue that the federal schedule – as defined in 21 U.S.C. § 802 – provides the "generic" version of a "controlled substance offense" as intended by the Commission. *Id.*

Yet comparison of the instant situation to that presented in *Taylor v. United States*, the genesis of the categorical approach, elucidates why there is no need to discern a generic form of "controlled substance offense." The practice of attempting to identify a "generic" crime is based on the courts' need to divine what Congress or the Sentencing Commission intended when using a particular word because of varying understandings in the states. For example, in *Taylor*, because "[t]he word 'burglary' has not been given a single accepted meaning by the state courts[ and] the criminal codes of the States define burglary in many different ways," the Supreme Court utilized categorical analysis to discern what Congress intended "burglary" to mean. 495 U.S. at

7

580. Did Congress intend "'burglary' to mean whatever the State of the defendant's prior conviction defines as burglary, or [did it intend] that some uniform definition of burglary be applied to all cases[?]" *Id.* The Supreme Court held that courts should compare the elements of a state statute of conviction and the "generic" version intended by Congress or the Commission to ensure that a prior conviction was a valid predicate for a sentence enhancement. *See id.* at 598-99, 602.

Here, by contrast, "controlled substance" has only one meaning, consistent throughout the nation. In each state, it denotes "any type of drug whose possession and use is regulated by law." *Black's Law Dictionary* (10th ed. 2014). The specific substances listed on the state schedules may differ, but that does not alter the meaning of "controlled substance" in any way. Consequently, there is no discrepancy to be resolved through the analytical process of defining a generic "controlled substance."

Other words in the § 4B1.2(b) definition of "controlled substance offense" might merit application of this analytical tool. For example, if there were a discrepancy between how New York defines "distribution" and how the federal system defines "distribution," the Court would be required to outline a generic form of "distribution" in order to divine the intent of the Commission. *See Savage*, 542 F.3d at 964 (applying the categorical inquiry to the word "sale" in a Connecticut statute of prior conviction to determine "whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of the predicate offense"). By contrast, the Court need not define a generic drug schedule. The Commission intended to incorporate state offenses, and those state offenses make reference to the drug schedules of their state. That the federal drug schedule has nationwide application does not make it "generic" in the sense meant by *Taylor*.

As the Ninth Circuit aptly stated, "[i]nterpreting a term used in the Guidelines based on its 'generic definition' ... represents a useful tool for divining legislative intent. But when the plain meaning of a term is readily apparent from the text, context, and structure of the relevant Guidelines provision and commentary, that meaning is dispositive and there is no need to rely on

8

the 'generic definition' framework." *United States v. Rivera-Constantino*, 798 F.3d 900, 903-04 (9th Cir. 2015) (citations omitted).

The Court concludes that that the Guidelines definition for "controlled substance offense" clearly intends to incorporate state drug schedules, and so the application of categorical analysis to the term is unnecessary in this context.

### 2. Were the Court to Apply Defendant's Conception of the Categorical Approach, It Would Compel Absurd Results

To adopt Defendant's understanding of the Guidelines provision would compel absurd results, which are to be avoided. *See United States v. Pope*, 554 F.3d 240, 246 (2d Cir. 2009) (discussing the absurd results of adopting an interpretation of a Guidelines provision to bolster the conclusion that a contrary holding "would directly contradict the plain meaning"); *United States v. Turkette*, 452 U.S. 576, 580 (1981) ("absurd results are to be avoided").

First, given Defendant's contention that "an offense under federal or state law" does not clearly reveal the Commission's intent to incorporate state drug schedules, the Court asked defense counsel how the Commission should have drafted a definition to incorporate any substances that individual states choose to control. Counsel answered at conference, "I'm not sure there's a way, there may be a way, a[n] explicit way to say whatever any state does at any time could be considered a federal predicate...," and did not offer a way to accomplish that textually in his subsequent written submission either. If the Commission were unable to adopt the states' laws by reference, the categorical approach would be transformed into a constitutional prohibition. There is no authority for such a constricting and unyielding system. Moreover, if it were just a matter of using more express language, this effort would be redundant; the current formulation by its plain text incorporates state schedules.

Second, Defendant's interpretation of the Guidelines would mean that a defendant convicted of distributing cocaine or heroin – substances on all states' schedules – in a state with a schedule that perfectly matches the CSA might receive a higher sentence for a subsequent federal offense than a similarly situated defendant convicted in a state with a mismatched

9

schedule. To be sure, the desire to promote uniformity in sentencing which inspires the Guidelines cuts in both directions. The Government's position might lead a defendant convicted of distributing HCG in New York to receive a higher Guidelines range for a subsequent federal offense than a defendant who distributes HCG in a state that does not schedule the substance. Nonetheless, this rarer, latter occurrence at least finds a basis in states' efforts to criminalize the distribution of certain drugs that may be a recent scourge in their communities. The more prevalent discrepancies in the treatment of defendants' past narcotic- or opioid-based convictions would merely reflect legal fiction.

Third, adopting Defendant's view would result in the additional absurdity of either requiring Congress to constantly update the CSA to encompass fifty different states' schedules, or have the anti-federalist effect of coercing states to remove any substances from their drug schedules that do not appear on the CSA.[1] As explained above, the claim that *Taylor* and its progeny demand such a result, at least with respect to indivisible criminal statutes, is far afield from the original rationale of the categorical approach.

Defense counsel stated at oral arguments, "it can't be that the vagaries of state law determine what a defendant later faces in federal court." Tr. 29:7-9. The Court agrees. Absent expressions of clear contrary intent, the best way to promote uniformity is to give meaning to the Sentencing Commission's desire that state convictions for offenses related to the substances those states' control should qualify as predicates.

### 3. The Court Recognizes a Split of Authority in a Similar Context

Based on the representations of the parties and the Court's own research, it seems that only a handful of courts nationwide have considered the exact arguments raised here – that is, the interplay between mismatched drug schedules and the definition of "controlled substance offense" in § 4B1.2(b). In those few cases, the courts did apply the type of generic analysis Defendant argues for in the case at bar. *See United States v. Barrow*, 230 F. Supp. 3d 116, 122-

---

[1] Alternatively, it might compel states to transform indivisible criminal statutes into divisible criminal statutes so as to require modified categorical analysis.

10

23 (E.D.N.Y. 2017) (holding that the presence of HCG on the New York drug schedule means a conviction under 220.31 is categorically broader than a conviction for a generic "controlled substance offense"); *United States v. Espinoza*, No. 09-CR-0103(CRB), 2015 WL 5301559, at *3-4 (N.D. Cal. Sept. 10, 2015) (applying the Ninth Circuit precedent discussed below from the "drug trafficking offense" context to 4B1.2(b), but upholding the sentence enhancement based on the application of the modified categorical approach to the divisible statute of conviction); *cf.* October 1, 2015 Sentencing in *United States v. Smith*, No. 14-CR-813(KPF) (S.D.N.Y.) (finding the defendant's prior conviction under 220.31 does not qualify as a predicate under 4B1.2 after considering different arguments than those presented here). None of those decisions is binding on this Court, and the opinions in those cases do not persuade the Court that the preceding analysis is incorrect.

The Court recognizes that its holding is also in tension with what a number of out-of-Circuit courts have held in the arguably comparable context of U.S.S.G. § 2L1.2's definition of "drug trafficking offense." For example, the Ninth Circuit in *United States v. Leal-Vega* addresses a virtually identical guidelines provision defining "drug trafficking offense." 680 F.3d 1160 (2012). Section 2L1.2 of the Sentencing Guidelines defines "drug trafficking offense" as "[a]n offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) of the possession of a controlled substance." As with the provision at issue in the case at bar, the definition both incorporates state law and omits any cross-reference to the federal drug schedule. The Ninth Circuit concluded that the reasoning underlying the categorical analysis, as articulated in *Taylor*, mandated finding a generic definition independent of the various state conceptions of what is meant by a term. *See Leal-Vega*, 680 F.3d at 1165-66. The *Leal-Vega* Court proceeded to adopt the list of substances in the CSA as the generic definition of "controlled substance," reasoning that "whether a substance is 'controlled' must, of necessity, be tethered to some state, federal, or local law." *Id.* at 1167. The Fifth and Eighth Circuits have also adopted the position expressed in *Leal-Vega* with respect to "drug trafficking offense." *See United States v. Gomez-*

11

*Alvarez*, 781 F.3d 787, 794 (5th Cir. 2015); *United States v. Sanchez-Garcia*, 642 F.3d 658, 661-62 (8th Cir. 2011).

Put simply, this Court disagrees. Whether the substance is "controlled" is most reasonably tethered to the law of the jurisdiction criminalizing the conduct. That is, a state controlled substance offense is tethered to the substances controlled by the state, much like a federal controlled substance offense is tethered to the Controlled Substances Act. *Taylor* and its progeny do not mandate the finding of a "generic" definition of "controlled substances" beyond that, nor does their rationale mandate that "controlled substance" be tethered to one, and only one, drug schedule, especially when the desire to promote uniformity in sentencing cuts in both directions.

### III. Conclusion

Given the foregoing analysis, Mr. Laboy's total offense level under the federal sentencing guidelines is 23.[2] With a criminal history category of V – which is not in dispute – the applicable Guidelines range for Mr. Laboy's sentencing is 84 to 105 months. *See* U.S.S.G. Sec. 5, Part A.

The Court hereby schedules Defendant's sentencing for January 29, 2018 at 3 P.M., at which time the Court will hear arguments pursuant to the factors set forth in 18 U.S.C. § 3553(a).

SO ORDERED.

Dated: December 20, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[2] Although the applicable *base* offense level is 24, as held above, it is agreed that Defendant received a two-point enhancement in his offense level pursuant to U.S.S.G. § 2K2.1(b)(4)(A) because the firearm was stolen, and received a three-point decrease for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a)-(b).